**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GWENDOLYN DAMIANO,** : | |
| : | |
| **Plaintiff** : | **CIVIL ACTION NO. 3:13-2635** |
| : | |
| **v.** : | **(JUDGE MANNION)** |
| : | |
| **SCRANTON SCHOOL** | |
| **DISTRICT***, et al.,* : | |
| : | |
| **Defendants** : | |

# M E M O R A N D U M

Plaintiff Gwendolyn Damiano was a principal at the Robert Morris Elementary School ("RMES") in the Scranton School District ("SSD") from August 2009 until April 2013. SSD administrators conducted a meeting with plaintiff on April 30, 2013, regarding her performance. She was demoted from principal of RMES and reassigned, at the same pay, as vice principal of the Isaac Tripp Elementary School and then to Neil Armstrong Elementary School. She was directed to advise RMES staff and parents of the students that she would no longer be with the school. Subsequently, she was notified of misconduct charges filed against her and hearings were held. Plaintiff was terminated by the SSD board in November 2013. Plaintiff alleges that her Fifth and Fourteenth Amendment due process rights were violated with respect to her demotion, suspension and termination, and that she was retaliated against for exercising her First Amendment rights challenging her suspension and termination. She now sues the district and six members of the school

board, namely, Robert Sheridan, Robert Lesh, Lynn Ruane, Nathan Barrett, Armand Martinelli, and Said Douaihy (collectively the "District Defendants"). She also sues the president of the Scranton Federation of Teachers (i.e., teachers' union), Rosemary Boland. In addition to violations of her due process rights and retaliation, plaintiff alleges civil conspiracy to violate her constitutional rights. Pending are the motions to dismiss plaintiff's second amended complaint, (Doc. 46), filed by SSD and the six board members, (Doc. 51), and by Boland, (Doc. 54). The court will grant, in part, and deny, in part, defendants' motions.

## I.   BACKGROUND[1]

Plaintiff was a professional educator in Pennsylvania for about 20 years. As a professional employee of SSD, she was a principal at two schools. In particular, plaintiff alleges that she was principal at RMES from August 2009 through April 30, 2013. Plaintiff was then demoted to vice principal of another school in the SSD. On May 10, 2013, SSD placed plaintiff on a Contract for Continued Employment ("CCE") which stated that she would no longer have any administrative authority at Northeast Intermediate School and that her

---

[1]All facts are taken from plaintiff's second amended complaint, (Doc. 46), unless otherwise noted. The facts alleged in plaintiff's second amended complaint must be accepted as true in considering the defendants' motion to dismiss. See Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

future position with SSD would be determined by a successful completion of her improvement plan. SSD also prohibited plaintiff from discussing any matters associated with her CCE, and allegedly did not give her opportunity to respond to her demotion before it was imposed. On June 3, 2013, SSD suspended plaintiff, with pay, from her employment with the district. Prior to her suspension, SSD allegedly failed to provide her with notice and an explanation of the reasons, and did not give her an opportunity to respond to her suspension. On July 3, 2013, SSD sent plaintiff a letter advising her of a statement of misconduct charges, and suspended her with pay and with intent to dismiss her from employment. One of the charges against plaintiff involved the security of the 2013 PSSA tests at RMES. The letter also advised plaintiff that she could request a hearing and that the SSD board would then conduct evidentiary hearings to determine whether she should be terminated from her employment. Plaintiff alleges that she was not given notice or an opportunity to respond before the suspension with the intent to dismiss, was imposed.

Later in 2013, the board scheduled plaintiff's suspension and termination hearings for August 27, and September 16, 18, 19, 23, 25, and 26. Defendant Boland participated with the SSD solicitor when he prepared the witnesses to testify at plaintiff's hearings and she also questioned witnesses at the hearings. Boland was also present in the SSD offices before and after the witnesses testified. SSD presented its case against plaintiff at the August 27, and September 16 and 18 hearings, and rested its case.

Plaintiff alleges that SSD failed to substantiate any of the charges against her. The hearings, when plaintiff was scheduled to testify and present her case, were cancelled by SSD, despite the objection of plaintiff's counsel, so defendant Lesh could first review the hearing transcript.

Plaintiff alleges that the board cancelled and failed to timely reschedule the hearings at which she would present her case so that they could placate the demands of Boland, who had a symbiotic relationship with the District Defendants, which resulted in virtual control of SSD by Boland and the teacher's union. On October 25, 2013, about five weeks after the hearings were cancelled, and at a time when SSD had still not rescheduled the hearings, plaintiff filed the instant civil rights action, (Doc. 1), seeking a mandatory injunction requiring the district to conduct the remaining hearings.

The hearings were rescheduled on November 18 and 19, 2013, at which plaintiff presented her defense to the charges and SSD completed the hearings. On November 25, 2013, SSD sustained the July 3, 2013 charges filed against plaintiff relating to her suspension with intent to dismiss and dismissed her from employment. SSD allegedly did not present any evidence or make any findings with respect to plaintiff's demotions which occurred on April 30, May 1 and May 10, 2013, or with respect to her suspension on June 3, 2013. District Defendants also allegedly failed to provide plaintiff with her due process rights prior to her demotions and suspension.

On December 19, 2013, plaintiff appealed the decision of SSD to

terminate her to the Pennsylvania Secretary of Education. On July 10, 2014, the Secretary of Education issued an order reversing SSD's decision and stating that "Damiano shall be reinstated to her position as Principal and made whole for all losses occasioned by her dismissal." The order also stated that "there is insufficient evidence to sustain the District's dismissal of [Damiano]." Consequently, at an August 6, 2014 meeting between plaintiff and the current superintendent, SSD reinstated plaintiff and placed her in John Adams Elementary School, allegedly the worst performing elementary school in the SSD. Plaintiff was reassigned to John Adams despite a March 10, 2014, written "recommendation" of defendant Martinelli, the Chairperson of the Personnel Committee, which indicated that the district would place plaintiff in her old position as principal of RMES if the results of her due process hearing were overturned by the Secretary of Education.

SSD appealed the decision of the Secretary of Education to the Pennsylvania Commonwealth Court and on June 5, 2015, the court affirmed the Secretary's decision reversing plaintiff's dismissal and reinstating her to the position of principal at RMES. (Doc. 77).

## II.    PROCEDURAL BACKGROUND

On October 25, 2013, plaintiff initiated this civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The District Defendants filed a motion to dismiss the complaint for failure to state a claim on February 13, 2014. (Doc.

5

10). Plaintiff then filed her first amended complaint on March 7, 2014. (Doc. 16). On March 21, 2014, the District Defendants filed a motion to dismiss the amended complaint for failure to state a claim. (Doc. 19). Plaintiff was then granted leave to file a second amended complaint ("SAC"), (Doc. 45), and it was filed on October 23, 2014. (Doc. 46). On November 13, 2014, the District Defendants filed a motion to dismiss the SAC for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), and a brief in support. (Doc. 51, Doc. 53). On November 19, 2014, defendant Boland filed a motion to dismiss under Rule 12(b)(6), (Doc. 54), and a brief in support the next day, (Doc. 55). On December 2, 2014, plaintiff filed her brief in opposition to the District Defendants' motion to dismiss with attachments, namely, a copy of her SAC and copies of two unpublished decisions. (Doc. 60). On December 8, 2014, plaintiff filed her brief in opposition to Boland's motion with the same three attachments. (Doc. 63). The District Defendants filed a reply brief in support of their motion on December 17, 2014. (Doc. 66). Both motions seeking complete dismissal of plaintiff's SAC are ripe for disposition.

In Counts I-VII of her SAC, plaintiff alleges violations of her Fifth and Fourteenth Amendment due process rights against the District Defendants regarding her demotion, suspension and termination. In Count III, plaintiff alleges that the CCE "violated the Freedom of Speech [C]lause contained in the First Amendment of the United States Constitution because the provision therein requiring her to refrain from discussing the [CCE] was

imposed upon her by the District without any compelling reason or other legitimate justification therefore." (Doc. 46, ¶ 32). In Count VIII, plaintiff alleges the District Defendants retaliated against her for exercising her First Amendment rights challenging her demotion, suspension and termination. Plaintiff indicates that her due process claims and retaliation claim are brought pursuant to 42 U.S.C. §1983.

In Count IX, plaintiff alleges that defendant Boland retaliated against her by "engag[ing] in [a] campaign to destroy [plaintiff's career]" for exercising her First Amendment rights regarding her criticism of Boland's article in the union newsletter and for challenging the legality of her suspension and termination. Plaintiff also alleges in Count IX that the SSD's policy of allowing Boland to participate in the hearings regarding her suspension and termination facilitated SSD's decision to suspend and terminate her, and that Boland therefore participated in SSD's deprivation of her Fourteenth Amendment rights through their suspension and termination of her without a proper hearing. In her final claim, Count X, plaintiff alleges that all defendants colluded to deprive her of her constitutional rights and to retaliate against her for exercising her First Amendment rights. As such, plaintiff alleges that all defendants are liable for civil conspiracy to deprive her of her First Amendment and Fourteenth Amendment rights pursuant to 42 U.S.C. §1983.

As relief, plaintiff requests compensatory damages against all defendants and punitive damages against the individual SSD board members

and against Boland. (Doc. 46, at 31). Plaintiff sues the six SSD board members "individually and in their official capacity as members of the Board of Education of the District." (Doc. 46, ¶ 3).

The court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because plaintiff avers violations of her due process rights under the Fourteenth Amendment of the U.S. Constitution as well as retaliation in violation of the First Amendment. (Doc. 46). Venue is appropriate in this court since the alleged constitutional violations occurred in this district and all parties are located here. *See* 28 U.S.C. §1391.

## III.   STANDARDS OF REVIEW

### *A.   Motion to Dismiss*

The defendants' motion to dismiss are brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts

alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (*quoting* Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250,

1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## *B.    Section 1983*

The school district and the board members are state actors for purpose of §1983. *See* Kline ex rel. Arndt v. Mansfield, 454 F.Supp.2d 258, 262 (E.D.Pa. 2006).

To state a claim under section 1983, a plaintiff must meet two threshold requirements. She must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, she was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983 fails as a matter of jurisdiction, Polk Cnty. v. Dodson, 454

U.S. 312, 315 (1981), and there is no need to determine whether a federal right has been violated. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). *See also* Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing *Rode*). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

With respect to punitive damages for a §1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the

defendant's knowledge of the illegality of his actions, not the egregiousness of his actions. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999)).

## IV.    DISCUSSION

### A.    Fifth Amendment Claims

The District Defendants move to dismiss plaintiff's claims under the Fifth Amendment asserted in Count III, ¶31, and Count VI, ¶47, of her SAC. Plaintiff does not assert any opposition to the District Defendants' contention that she fails to state an actionable claim under the Fifth Amendment.

Insofar as plaintiff claims that her due process rights under the Fifth Amendment were violated, the court finds that these claims are subject to dismissal. The plaintiff has no Fifth Amendment claim since there is no alleged involvement by a federal actor. *See Leventry v. Watts,* 2007 WL 1469038, *2 (W.D. Pa. May, 17, 2007); *Hammond v. City of Wilkes-Barre,* 2012 WL 3542277, *4 (M.D.Pa. Aug. 14, 2012) (due process claim under Fifth Amendment only applies to federal actors) (citing *Caldwell v. Beard*, 324 F.Appx 186, 189 (3d Cir. 2009)). Thus, the plaintiff's Fifth Amendment due process claims are **DISMISSED WITH PREJUDICE**.

### B.    Monell Claim and Official Capacity Claim

Since plaintiff names SSD as a defendant and alleges that it violated

12

her constitutional rights, the standards annunciated in *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), apply to her due process and retaliation claims against SSD. *See* McGreevy v. Stroup, 413 F.3d 359, 367–69 (3d Cir. 2005) (school district is subject to liability in a §1983 action under *Monell* ). A municipality is a "person" for purposes of §1983. *See* Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). But §1983 does not allow municipal liability under a theory of *respondeat superior*. Id. A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. Id.; see also Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D.Pa. 2014).("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." (citation omitted). The plaintiff bears the burden of identifying the policy or custom. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id. "Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila*., 181 F.3d

13

339, 357 (3d Cir. 1999) (citation omitted).

Plaintiff's second amended complaint fails to sufficiently state municipal liability claims against SSD under *Monell* except with respect to the First Amendment retaliation claim in Count VIII and the conspiracy claim under §1983 in Count X. *See* Moeck v. Pleasant Valley School Dist., 983 F.Supp.2d 516, 524 (M.D.Pa. 2013). Plaintiff's constitutional claims against SSD are based on the actions of the six board members. Plaintiff alleges that the six defendant members of the school board constituted a majority and, that they possessed complete and final decision making authority on all SSD matters. (Doc. 46, ¶ 5).

Plaintiff also must allege that SSD unconstitutionally implemented or executed a policy statement, ordinance, regulation, decision or custom leading to the stated violations of her constitutional rights. Mann v. Palmerton Area School Dist., 33 F.Supp.3d at 540. Further, plaintiff must show that the alleged unlawful conduct of the six defendant board members regarding her demotion, suspension and termination constitutes a policy made by "decisionmaker[s] possess[ing] final authority to establish municipal policy" who "issue[] an official proclamation, policy, or edict." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Plaintiff can also show a custom by "evidence of knowledge and acquiescence." Id. If plaintiff establishes a custom, she must also "demonstrate that, through its deliberate conduct, [SSD] was the 'moving force' behind [her alleged due process violations]." Bd.

14

[of County Comm'rs of Bryan County v. Bryan, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)](#).

Plaintiff asserts that SSD and the board members used their official roles to deprive SSD's employees of due process through official policy and procedure. The gist of plaintiff's SAC is that SSD and the six board members had a custom of denying pre-deprivation due process requirements prior to demotions, suspensions and terminations. In her due process claims against the District Defendants, plaintiff repeatedly alleges that SSD did not provide her with notice of or an explanation of the reasons for her demotion, suspension and termination before they were imposed or an opportunity to respond and present reasons why she should not have been demoted, suspended and terminated prior to their imposition. It is also alleged that post-deprivation due process was violated since the District Defendants postponed, for political reasons, the hearings regarding their intent to terminate plaintiff after they presented their case and refused to timely reschedule the hearings. As a result, plaintiff could not present her defense until November 18, 2013.

Plaintiff has not met her burden of identifying the policy or custom of SSD to deprive its professional employees of their due process rights regarding demotions, suspensions and terminations. As discussed below, plaintiff's pre-deprivation due process claims regarding her demotion, her June 3, 2013 suspension, and her July 3, 2013 suspension with the intent to

15

discharge will be dismissed since she received her pay with benefits and no termination occurred at these times. Also, plaintiff was afforded all the process she was due by the District Defendants since she received pre-termination notice of the charges while she was suspended, (Doc. 46, ¶ 53), and the right to request a hearing. Specifically, plaintiff admits that when SSD suspended her with intent to discharge on July 3, 2013, it also provided her with a written list of charges against her and a statement that the District would conduct a hearing "for the purpose of determining whether [she] should be dismissed from [her] employment with the School District." SSD also informed plaintiff that she had the right to request a hearing on the specified charges which she, in fact, requested. SSD then appointed a hearing officer to hear the charges against plaintiff and hearings were scheduled and conducted. (Doc. 46, ¶'s 53-55). After a continuance, plaintiff was also allowed to present her side of the case and defend herself against the charges. She ultimately prevailed on appeal. (Id., ¶ 57). As such, plaintiff's post-deprivation due process claims will also be dismissed against District Defendants. Thus, it can not be earnestly disputed that SSD had a procedure in place to advise its professional employees of the charges against them, to allow the employees to request a due process hearing, and to have a hearing officer hear the charges against the employees and for the employees to present their defense before they were terminated.

Since the court finds that plaintiff has failed to properly state a

cognizable due process claim against the individual defendant board members, plaintiff's due process claims based on municipal liability against SSD, under *Monell,* fail as a matter of law. *See* Deninno v. Municipality of Penn Hills, 269 Fed.Appx. 153, 158 (3d Cir. 2008) ("Even more fundamentally, there can be no municipal liability here because we have determined that none of the individual Defendants violated the Constitution.").

Therefore, plaintiff's constitutional claims against SSD, except for her First Amendment retaliation claim in Count VIII and her conspiracy claim in Count X, are **DISMISSED WITH PREJUDICE**. *See* Hertzler v. West Shore School Dist., 2013 WL 53982, \*4-\*5 (M.D.Pa. Jan. 03, 2013).

Moreover, to the extent plaintiff names the six board members as defendants in addition to SSD and sues them in their individual and official capacities, these defendants, in their official capacity, are part of the district itself. *See* Kentucky v. Graham, 473 U.S. 159, 165-166 (1985) (Section 1983 suits against individuals in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted). Thus, plaintiff's claims against the six board members in their official capacity are redundant of the claims plaintiff asserts against SSD. *See* Swedron v. Borough, 2008 WL 5051399, \*4 (W.D. Pa. Nov. 21, 2008) (Court held that official capacity claims under §1983 against defendant police officers should be dismissed since they were redundant of the claims against defendant Borough) (citing *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir.

17

1988)); *Brice v. City of York*, 528 F.Supp.2d 504, 516 n. 19 (M.D. Pa. 2007) ("claims against state officials in their official capacities merge as a matter of law with the municipality that employs them."); *Burton v. City of Phila*., 121 F.Supp.2d 810 (E.D. Pa. 2000);Donovan v. Pittston Area School Dist., 2015 WL 3771420, *5 (M.D.Pa. June 17, 2015) (Court dismissed with prejudice plaintiff's claims against board members of school district in their official capacity as redundant of claims against school district); Hill v. Bor. of Kutztown, 455 F.3d 225, 233 n. 9 (3d Cir. 2006).

As such, plaintiff's claims against the six board members in their official capacity are **DISMISSED WITH PREJUDICE**. The six board member defendants can be sued under §1983 in their individual capacity. Donovan v. Pittston Area School Dist., 2015 WL 3771420, *16; Kohn v. School Dist. of City of Harrisburg, 817 F.Supp.2d 487, 510 (M.D.Pa. 2011) ("The individual defendants can certainly be sued in their personal capacities for actions they undertook as part of their jobs on their [School] Boards.").

Further, insofar as plaintiff seeks punitive damages against the six board members in their official capacity, this request for relief is **DISMISSED WITH PREJUDICE**. *See* City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748 (1981).

### C. Suspension with Pay--Pre-Deprivation Due Process Claims

The 14th Amendment prohibits a state from "depriv[ing] any person of

life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. "[A] procedural due process analysis involves a two step inquiry: (1) does the complaining party have a protected liberty or property interest and, if so, (2) does the available process comport with all constitutional requirements." Bowen v. Ryan, 2006 WL 3437287 (M.D. Pa. Nov. 29, 2006) aff'd, 248 F.App'x 302 (3d Cir. 2007); *see also* Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). To have a property interest in a job, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Hill v. Borough of Kutztown, 455 F.3d 225, 234 (*citing* Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005)). Whether a legitimate entitlement exists is a question of state law. Hill, 455 F.3d at 234. Thus, while state law determines if an employee has a property right in continued employment, the process that is due is a question of federal law. McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995).

Under Pennsylvania law, "[a] local government in Pennsylvania cannot provide its employees with tenure status unless there exists some express legislative authority for doing so." Elmore, 399 F.3d at 282 (*citing* Stumpp v. Stroudsburg Mun. Auth., 659 A.2d 333, 334 (Pa. 1995)). The Pennsylvania legislature has granted professional employees a tenure status, and thus a protected property interest in their jobs, specifying requirements for termination of a contract. 24 Pa.C.S. §11–1122. Certified teachers are professional employees. 24 Pa. C.S. §11–1101(1). Pennsylvania requires that

19

public school teachers hold a certificate. 24 Pa.C.S. §12-1201. A contract for employment also confers a property right when "the contract itself includes a provision that the state entity can terminate the contract only for cause." Dee v. Borough of Dunmore, 549 F.3d 225, 230-31 (3d Cir. 2008) (*citing* Unger v. Nat'l Residents Matching Prog., 928 F.2d 1392 (3d Cir. 1991)).

"Denial of continued public employment can also constitute deprivation of a liberty interest." Baraka v. McGreevey, 481 F.3d 187, 209 (3d Cir. 2007) (*citing* Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972))." In the public employment context, this liberty interest arises "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Roth, 408 U.S. at 573 (*quoting* Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)).

Plaintiff alleges that she holds a professional educator's certificate issued by the Pennsylvania Department of Education, that she had a distinguished career, and that at all relevant times she was a professional educator employed by SSD under the Pennsylvania School Code. Thus, plaintiff alleges that she had a protected property interest in her employment and a right to continued employment with SSD. (Doc. 46, ¶'s 9-12).

The District Defendants argue that all of plaintiff's pre-deprivation due process claims regarding her May 10, 2013 demotion and placement on an improvement plan with a CCE, her June 3, 2013 suspension, and her July 3, 2013 suspension with the intent to discharge must be dismissed since she

received her pay with benefits and no termination occurred at these times.

In Count III, plaintiff alleges that SSD failed to give her notice and an explanation of the reasons for her demotion and an opportunity to respond to the demotion before it was imposed. She also alleges that she was not provided with due process or a hearing before the CCE was imposed on her. In Count IV, plaintiff admits that her suspension was with pay, but she alleges that "[t]he District did not provide [her] with notice of, or an explanation of, the reasons for the suspension before it was imposed or an opportunity to respond and present reasons why she should not have been suspended before it was imposed." As such, plaintiff claims that the District Defendants violated her Fourteenth Amendment right to due process of law. (Doc. 46, ¶'s 35-36).

In Count V, plaintiff alleges that on July 3, 2013, SSD suspended her with the intent to discharge her from employment but she admits that she did not suffer a loss of pay as a result. She also alleges that SSD did not provide her with notice of, or an explanation of, the reasons for the suspension with intent to dismiss before it was imposed or an opportunity to respond and present reasons why she should not have been suspended before it was imposed. Plaintiff claims that this conduct violated her Fourteenth Amendment due process rights.(Doc. 46, ¶'s 40-42). In Count VII, plaintiff acknowledges that her July 3, 2013 suspension was accompanied with a written list of charges against her which included the statement that SSD would conduct a

hearing "for the purpose of determining whether you should be dismissed from your employment with the School District." Plaintiff also admits that SSD informed her that she had the right to request a hearing on said charges and, that she, in fact, requested a hearing and a hearing officer was appointed. Subsequently, hearings were scheduled and then conducted, and plaintiff was allowed to defend herself against the charges. (Doc. 46, ¶'s-54 53). Plaintiff was later terminated on November 25, 2013, but she concedes that she continued to receive her pay at all times until her termination. (Doc. 46, ¶'s 20, 34, 40, 61 & 70).

Plaintiff contends that she has asserted cognizable pre-deprivation procedural due process claims since her July 3, 2013 suspension with pay was the functional equivalent of a permanent discharge. (Doc. 60, at 20-23). Plaintiff relies, in part, on this court's decision in Moffit v. Tunkhannock Area School Dist., 2013 WL 6909958 (M.D.Pa. Dec. 31, 2013). (See Doc. 60, Ex. B). *Moffitt*, however, is distinguishable. See Moffitt, 2013 WL 6909958, \*1 (plaintiff was suspended indefinitely without pay). The other cases on which plaintiff relies are also distinguishable since they held that suspensions of public employees without pay require pre-deprivation process. *See* Cipriani v. Lycoming County Housing Authority, 177 F.Supp.2d 303, 319 (M.D.Pa. 2001) ("[A] governmental employee who is suspended with pay is not entitled to a pre-suspension hearing providing the employee with notice and an opportunity to be heard.") (citing Gilbert, 520 U.S. at 930–31, 117 S.Ct. 1807);

22

*Jerrytone v. Musto, 167 Fed.Appx. 295, 301 (3d Cir. 2006)* ("Given the minimal property interest involved, [teacher's] due process rights were not violated when he was placed on paid suspension without a prior hearing after allegations of serious misconduct ...."); *see also* Coover v. Saucon Valley Sch. Dist., 955 F.Supp. 392, 404 (E.D.Pa. 1997) ("A public employee has a property interest in not being suspended without pay with intent to dismiss.") (citation omitted).

"'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" Biliski v. Red Clay Consol. Sch. Dist. Bd. Of Educ., 574 F.3d 214, 220 (3d Cir. 2009) (quoting Gilbert v. Homar, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997)). "[W]here it would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause." Gilbert v. Homar, 520 U.S. at 930. Thus, a public employee is not absolutely entitled to a pre-suspension hearing. Id.; *see also* Gilbert v. Homar, 520 U.S. at 930 (Supreme Court "rejected the proposition that due process *always* requires the State to provide a hearing prior to the initial deprivation of property."). To determine what process is due, the court must examine three factors: 1) plaintiff's interest in not being suspended with pay from June 3, 2013 through November 25, 2013; 2) SSD's interest in expeditiously disciplining unsatisfactory employees and "the avoidance of administrative burdens;" and 3) the risk of erroneous deprivation. Biliski, 574 F.3d at 221; see also Hertzler

23

v. West Shore School Dist., 2013 WL 53982, \*3. Plaintiff had an interest in her job and her pay, Hertzler, 2013 WL 53982, \*3, but she received her salary uninterrupted during her entire suspension. As the court indicated in Kairo-Scibek v. Wyoming Valley W. Sch. Dist., 880 F. Supp. 2d 549, 558-59 (M.D.Pa. 2012), since the teacher received pay during her suspension, "[she] did not experience an economic burden." The evidence in *Kairo-Scibek* showed that "there was no interruption to anything other than the fact that [plaintiff] was not at work." Id. To the extent plaintiff alleges in her SAC that she lost retirement credits during her suspension, she is incorrect since "[s]eniority shall continue to accrue during suspension." Hertzler v. West Shore School Dist., 2013 WL 53982, \*3 (quoting 24 P.S. §11–1125.1(a)). As such, "plaintiff has suffered no injury to her seniority rights as a result of the suspension." Id. Also, prior to her suspension, plaintiff was placed on a performance improvement plan and she was notified that her future position with SSD would be determined by a successful completion of her plan. Thus, plaintiff's interest is minimal. SSD has a significant interest in promptly disciplining employees that are alleged to have committed wrongdoing and in protecting the integrity of the district. *See* Jerrytone v. Musto, 167 Fed.Appx. at 301 (state had strong interest in "maintaining public confidence in the school system"). The risk of erroneous deprivation was minimized since plaintiff received notice of the charges as well as a prompt post-suspension hearing in which she was allowed to defend against the charges before an

24

impartial hearing officer. Hertzler v. West Shore School Dist., 2013 WL 53982, *3 (citations omitted).

The pre-deprivation procedures utilized by the District Defendants were sufficient to meet due process requirements. *See* McDaniels v. Flick, 59 F.3d at 458 (notice of pre-termination hearing was constitutionally adequate since employee was suspended with pay and employee did not forthwith suffer a serious adverse employment action). Thus, plaintiff's due process claims regarding her paid suspension without pre-deprivation process are **DISMISSED WITH PREJUDICE**. Additionally, plaintiff's due process claims regarding her demotion without pre-deprivation process are **DISMISSED WITH PREJUDICE** for the same reasons discussed above, i.e., plaintiff had a property interest in continued employment with SSD but the three-step balancing test set forth in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), weighs against requiring a pre-deprivation hearing.

Accordingly, plaintiff's pre-deprivation due process claims raised in Counts I-III of her SAC fail to state cognizable claims and are **DISMISSED WITH PREJUDICE** under Fed.R.Civ.P. 12(b)(6). Also, plaintiff was afforded all the process she was due and she asserts no actionable pre-deprivation due process claims in Counts IV-V of her SAC and these claims are **DISMISSED WITH PREJUDICE** under Fed.R.Civ.P. 12(b)(6).

### *D. Post-Deprivation Due Process Claims*

In Count VII of her SAC, plaintiff alleges that her due process rights were violated despite the termination hearings which commenced on August 27, 2013, since there was a 60-day delay after SSD presented its case and before she was allowed to present her side, i.e., between the hearing dates of September 18, 2013 and November 18, 2013. Plaintiff alleges that her post-deprivation hearing was interrupted and unnecessarily delayed, (Doc. 46, ¶64). Plaintiff's claim fails because the post-deprivation hearing occurred within a constitutionally adequate and sufficiently prompt period of time, (Doc. 46, ¶61). Furthermore, plaintiff admits that she received a detailed written list of charges on July 3, 2013, during the period of her paid suspension and well before she was terminated, (Id., ¶53), and she was allowed to defend herself against the charges,(Id., ¶'s 57 & 61), on November 18 and 19, 2013. The board then voted to terminate plaintiff on November 25, 2013.

Since plaintiff was a public employee with a legitimate interest in continued employment, she was entitled to "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story" before her employment was terminated. Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

A state provides constitutionally adequate procedural due process when it provides reasonable post-deprivation remedies. DeBlasio v. Zoning Bd. of

Adjustment, 53 F.3d 592, 597 (3d Cir. 1995), overruled on other grounds sub nom, United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003). In Zinermon v. Burch, 494 U.S. 113, 125-26 (1990), the Supreme Court stated a:

> §1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.* (Citations omitted). The constitutional violation actionable under §1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

"To take advantage of the process available, ... , a plaintiff must have sufficient notice." Kairo-Scibek, 880 F. Supp. 2d at 560. "A professional employee, such as Plaintiff, may not be dismissed prior to written notice from the school district designating cause for termination of the contract." Hammond v. Chester Upland School Dist., 2014 WL 4473726, *8 (E.D.Pa. Sept. 09, 2014) (citation omitted). "When a pre-termination hearing is not practical, a post-termination proceeding will suffice." Id. (citing Biliski, 574 F.3d at 224). There is no dispute that plaintiff had timely and sufficient notice

of the charges against her over one month before her hearings.

"When adequate post-deprivation procedures exist, a plaintiff must avail him or herself of those procedures to properly state a procedural due process claim." [Kairo-Scibek, 880 F. Supp. 2d at 561](). The adequacy of a post-deprivation hearing frequently depends on whether it is provided in a timely manner. *See* [Cleveland Board of Education v. Loudermill, 470 U.S. at 547]() ("At some point, a delay in the post-termination hearing would become a constitutional violation."). However, in [Loudermill, 470 U.S. at 547](), the court held that a nine month post-deprivation hearing delay "is not, of course, unconstitutionally lengthy per se." Plaintiff was given adequate time to prepare for her hearing after the notice was issued and her hearing commenced promptly but she claims the subsequent delay during the hearings was unlawful. Plaintiff availed herself of the procedures offered by District Defendants and requested a hearing. (Doc. [46](), ¶ 53). Hearings were held and plaintiff was afforded an opportunity to respond to the charges against her. The court finds that the hearings in this case constituted an adequate post-deprivation procedure and did not violate due process.

The Pennsylvania Public School Code of 1949, 24 P.S. §§11-1127, *et seq*., sets forth a statutory remedy and mandates an administrative process for challenging demotions and dismissals that ends by an appeal to the Pennsylvania Secretary of the Department of Education. *See* [Merritt v. W. Mifflin Area Sch. Dist., 56 Pa. Commw. 126, 424 A.2d 572 (Pa. Cmwlth.]()

1981). District Defendants followed the statutorily mandated process for dismissal of professional employees by providing plaintiff with a hearing before the board of school directors. The procedure for dismissal of a professional employee is set forth in in 24 P.S. §§11-1127 through 11-1131, and provides for notice and hearing before the board of school directors and a detailed statement of the charges against the employee, for a 2/3 vote by school board members to effectuate dismissal. Also, the School Code allows the hearing to be delayed. *See* 24 P.S. §11-1127 ("[a]ny such hearing may be postponed, continued or adjourned"). Thus, plaintiff was given the administrative remedies provided by Sections 1127 to 1131 of the School Code, 24 P.S. §§11-1127-11-1131. After the board voted to terminate plaintiff, she appealed to the Secretary of the Department of Education, pursuant to 24 P.S. §11-1132, and her dismissal was reversed. District Defendants then appealed to the Pennsylvania Commonwealth Court and plaintiff's reinstatement was upheld. "[A] cause of action for a due process violation does not accrue at Plaintiff's suspension or termination, rather it accrues when Plaintiff seeks to grieve her deprivation and is denied that opportunity." Belas v. Juniata County School Dist., 2005 WL 2100666, *8 (M.D.Pa. Aug. 26, 2005). Plaintiff was not denied the opportunity to challenge her termination despite the delay in the hearings.

The post-deprivation process District Defendants provided plaintiff was constitutionally adequate. Plaintiff received fair notice and a complete

29

post-suspension evidentiary hearing regarding her dismissal that occurred over five days, between August 27, 2013 and November 19, 2013. After the hearing commenced on August 27, it was later continued by agreement of the parties until September 16. The hearing reconvened on September 16 and September 18, and then the District rested its case. The hearing was continued, notwithstanding plaintiff's objection, until November 18, and plaintiff presented her defense on this day and on November 19. Thus, despite the continuance from September 18 through November 18, the last two days of hearings specifically allowed plaintiff to present evidence in her defense. As such, plaintiff had an opportunity to be heard as to why the Board should not terminate her employment prior to the Board's decision on November 25, and she received all the process that was due her.

Thus, plaintiff's post-deprivation procedural due process claims contained in Count VII of her SAC fail as a matter of law under Fed.R.Civ.P. 12(b)(6) and are **DISMISSED WITH PREJUDICE**.


### *E. Fourteenth Amendment Stigma-Plus Claim*

Count VI of plaintiff's SAC contains a 14th liberty interest in her reputation "stigma-plus" claim. (Doc. 46, ¶'s 46-47). Specifically, plaintiff alleges that she was suspended with the intent to discharge her from employment in July 2013. She further alleges that at this time she was stigmatized by false and defamatory statements made in public by the District

Defendants, including that she had forged a teacher's signature on a teacher evaluation form. Plaintiff further alleges that she was denied a prompt name-clearing hearing to refute the false and defamatory statements.

"[R]eputation alone is not an interest protected by the Due Process Clause." Dee v. Borough of Dunmore, 549 F.3d 225, 233 (3d Cir. 2008) (citations omitted). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." Id. at 233-34 (citations omitted). "[M]ere damage to reputation, apart from the impairment of some additional interest previously recognized under state law, is not cognizable under the due process clause." Sturm v. Clark, 835 F.2d 1009, 1012 (3d Cir. 1987). Thus, "defamation is actionable under [§1983] only if it occurs in the course of, or is accompanied by, a change or extinguishment of a right or status guaranteed by state law or the Constitution." Clark v. Twp. of Falls, 890 F.2d 611, 619 (3d Cir. 1993). "In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' then it deprives the employee of a protected liberty interest. Hammond v. Chester Upland School Dist., 2014 WL 4473726, *8 (E.D.Pa. Sept. 09, 2014) (citing Hill, 455 F.3d at 236).

Plaintiff Damiano had a protected property interest in not being dismissed without just cause. District Defendants provided plaintiff with

31

hearings and she was subsequently terminated. Plaintiff has satisfied the "plus" requirement of stigma plus in light of the adverse employment action taken against her. Dee, 549 F.3d at 234 ("[A] constitutionally protected property interest qualifies as a sufficient 'plus.'"). As such, the alleged defamation by District Defendants damaging plaintiff's reputation and impugning her integrity combined with the deprivation of a state law-created property interest leads to a due process liberty interest.

Since plaintiff has satisfied the "plus" requirement, the court must address the "stigma" prong of the "stigma plus" test. "To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statements (1) were made publicly and (2) were false." Id. at 235 (quoting Hill, 455 F.3d at 236). Plaintiff has alleged in Count VI that District Defendants made false statements about her and that were made publically and to public officials in Lackawanna County.

Since plaintiff has met the "stigma" prong, the court must determine whether the hearings District Defendants provided plaintiff qualified as the name-clearing hearing sufficient to satisfy the requirements of due process. Id. at 235 n. 12. When a due process deprivation occurs regarding an employer's dissemination of defamatory statements about a public employee with respect to her termination, the appropriate remedy is a name-clearing hearing. Hammond, 2014 WL 4473726, *9 (citation omitted). "Such a hearing would afford the plaintiff an opportunity to 'hear and answer first-hand any

stigmatizing charges, clearing his name of any false statements made about him, and curing the injury to his reputation.'" Id. (citing Patterson v. City of Utica, 370 F.3d 322, 335 (2d Cir. 2004)).

District Defendants contend that plaintiff's hearings regarding her dismissal conducted by the Board on August 27, September 16, September 18, November 18, and November 19, 2013, constituted the name-clearing hearing to which plaintiff was entitled. Whether the hearings conducted by District Defendants satisfy "the Due Process Clause's name-clearing requirement turns generally on whether the party seeking the hearing had notice and an opportunity to be heard at the prior proceeding." Graham v. City of Phila., 402 F.3d 139, 145 n. 4 (3d Cir. 2005).

Plaintiff states that at her hearings, District Defendants did not pursue the claim that she forged a teacher's signature on an evaluation form and did not offer any evidence regarding this defamatory allegation. She states that District Defendants' counsel did not pursue the issue in any filings with the Board of Education or with the Department of Education. Thus, plaintiff in her case-in-chief did not raise this issue at the hearings claiming that it was too prejudicial for her to do so and she alleges that she lost the ability to clear her name. Plaintiff also contends that her opportunity to clear her name regarding the July 2013 statements was not prompt due to the stated 60-day continuance during the hearings which did not reconvene for her defense until November 18, 2013. (Doc. 60, at 29-30).

Plaintiff was given notice and a name-clearing hearing that was held over five days. Plaintiff had ample opportunity to tell her side of the charges against her, including the claim that she forged a teacher's signature on an evaluation form. Plaintiff was provided with sufficient opportunity during the hearings to refute all of the charges against her as well as the defamation claim regarding the forgery. She and her counsel made a strategic and tactical decision not to address this claim during her case. Balancing the factors, *see* Mathews, 424 U.S. at 335, and considering plaintiff's interest in her reputation and livelihood as well as SSD's interest in making personnel decisions in the public interest and communicating those decisions to the public, the court finds that plaintiff's hearing constituted ample process and obviates her stigma-plus claim. *See* Graham, 402 F.3d at 147. As discussed above, the court finds that the name-clearing hearing was sufficiently prompt despite the 60-day continuance prior to plaintiff's case-in-chief.

Therefore, plaintiff's 14th Amendment stigma-plus claim contained in Count VI of her SAC is **DISMISSED WITH PREJUDICE**.

### F. First Amendment Retaliation Claim–Count VIII

In Count VIII of her SAC, plaintiff alleges that District Defendants retaliated against her in violation of the First Amendment for appealing her suspension and termination to the Secretary of Education, for filing this lawsuit, and for advocating the due process rights of SSD employees.

34

Specifically, plaintiff alleges that District Defendants retaliated against her by reinstating her employment as ordered by the Secretary but assigning her to be principal of John Adams Elementary School, the worst performing elementary school in SSD, and not RMES where she had been principal prior to her demotion and suspension. Plaintiff states that District Defendants even defied the recommendation of the board member in charge of the personnel committee for SSD (i.e., defendant Martinelli) by not placing her back at RMES after she prevailed on her appeal. Plaintiff also alleges that District Defendants retaliated against her by failing to make COBRA health benefits available to her when she was terminated.[2] Further, plaintiff alleges that SSD's "official policy [regarding the assignment of employees] facilitated the District Defendants' retaliation against [her]." (Doc. 46, ¶ 74).

Additionally, plaintiff alleges that her "speech regarding her suspension and termination, ... is a matter of public concern as it involves the constitutional due process rights of public employees, and involves her criticism of [SSD's] policy that permits [it] to suspend and terminate public employees without proper due process." (Doc. 46, ¶'s 72-75). Plaintiff argues

---

[2]The Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") "entitles qualified beneficiaries of group health plans to 'continuation coverage,' [29 U.S.C. §1161(a)], after the occurrence of a 'qualifying event'—such as the termination of employment—which would otherwise operate to deprive them of coverage, id. at §1163." Chatterjee v. School Dist. of Phila., 170 F.Supp.2d 509, 518 (E.D.Pa. 2001). "Under COBRA, an employer is obligated to notify such beneficiaries of this entitlement. Id. at §1166." Id.

that "[h]er speech therefore attempted to bring to light such potential and actual wrongdoing on the part of public officials; the defendants in this action." (Doc. 60, at 31). Thus, plaintiff states that her "speech regarding a public entity [SSD] and public officials' use of their official roles to deprive citizens of due process through official policy and procedure constitutes a public concern" and that she publicized her concerns by filing the instant lawsuit. (Id., at 32). Plaintiff points out the temporal proximity of the adverse action by stating that her termination (November 25, 2013) closely followed the date on which she filed her complaint in this case (October 25, 2013).

Further, the July 10, 2014 Order of the Secretary of Education reversing SSD's decision ordered plaintiff's reinstatement to her position as principal at RMES. (Doc. 77, at 8). SSD then appealed the Secretary's decision to the Commonwealth Court. SSD reinstated plaintiff on August 6, 2014, but reassigned her to John Adams Elementary which plaintiff alleges was in retaliation for her challenge to her "unlawful suspension and termination" and for her advocating for due process rights of SSD employees.

"The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment rights." Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citation omitted). In order for a plaintiff to state a First Amendment retaliation claim, he must show that: (1) he engaged in constitutionally protected conduct; (2)

defendant officials took adverse action against him sufficient to "deter a person of ordinary firmness from exercising his constitutional rights," Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); and (3) "the constitutionally protected conduct was a 'substantial or motivating factor' in the decision to [take adverse action against the plaintiff]." Rauser v. Horn, 241 F.3d 330, 333–334 (3d Cir. 2001) (quoting Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)); *see also* Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002) (noting that the third factor requires the demonstration of a "causal link between constitutionally protected action and the adverse action taken against him"). In her First Amendment retaliation claim in Count VIII, plaintiff has alleged these three elements.

However, District Defendants argue that plaintiff's speech challenging her suspension and termination are not matters of public concern and are only matters of personal interest concerning her individual employment with SSD. District Defendants also state that the content and context of plaintiff's present lawsuit seeking only damages as well as her participation in the hearings and appeal are limited to her specific employment circumstances and grievances and do not relate to any public concern. (Doc. 66, at 19-20).

Plaintiff sufficiently alleges how District Defendants retaliated against her for exercising her constitutional rights, and that she petitioned on a matter of public concern. *See* Borough of Duryea v. Gaurnieri, — U.S.–, 131 S.Ct. 2488, 2494 (2011). Additionally, "[w]hen a public employee's activity qualifies

as 'petitioning the government'–such as ... suing his employer–it is protected activity so long as the petition was not frivolous, or a 'sham,' regardless of whether the petition involved a matter of public concern." Hill, 455 F.3d at 242 n. 24 (citations omitted). Thus, a public employee who petitions the government through a formal mechanism such as a lawsuit is protected under the First Amendment from retaliation regardless of whether the petition concerns a matter of only private concern. *See* San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994).

In Karchnak v. Swatara Twp., 2009 WL 2139280, \*6 (M.D.Pa. July 10, 2009), the court stated:

> To meet the first prong of the *prima facie* case for retaliation, a statement made by a government employee is protected when: (1) it is made by the employee in her capacity as a citizen; (2) the statement involved a matter of public concern; and (3) the government did not have an adequate justification for treating the speaker differently than a member of the general public. *Hill,* 455 F.3d at 242. The landscape for public employees making First Amendment retaliation claims has been significantly altered since the United States Supreme Court's decision in *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). As the United States Court of Appeal for the Third Circuit recently observed, "*Garcetti* simply 'narrowed the Court's jurisprudence in the area of employee speech' by further restricting the speech activity that is protected." *Reilly v. City of Atlantic City,* 532 F.3d 216, 228 (3d Cir. 2008) (*quoting Foraker v. Chaffinch,* 501 F.3d 231, 241 (3d Cir. 2007)). After *Garcetti,* a court analyzing a public employee's First Amendment retaliation claims must first consider whether the employee's speech is made pursuant to the employee's official duties. "[T]he First Amendment does not prohibit managerial discipline based on an employee's

38

expressions made pursuant to official responsibilities." *Garcetti, 547 U.S. at 424*.

In *Moore v. Darlington Twp*., 690 F. Supp. 2d 378, 388 (W.D. Pa. 2010), the court explained:

> As far as speech, in order to pass the first step of the inquiry, Plaintiff must show that he "spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). To do so, he must navigate between the precedential Scylla and Charybdis of *Connick* and *Garcetti* by showing both that his speech was not on a matter of purely personal interest, *Connick v. Myers,* 461 U.S.138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and that it was not made pursuant to his official duties, (*Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)).
>
> "The standard for guiding this inquiry is whether the speech in question was made pursuant to the practically understood or expected duties of a Plaintiff's employment." *Id*. at 389. "An employee's speech involves a matter of public concern if it is fairly related to political, social, or other community concerns." *Eddy v. Corbett*, 2009 WL 2982643, *4 (W.D. Pa. 9-14-09)(citation omitted), affirmed 2010 WL 1999017, 381 Fed.Appx. 237 (3d Cir. 2010)(Non-Precedential).

In examining the facts alleged in plaintiff's SAC in relation to Rule 8(a)'s and *Iqbal's* pleading requirements, and in light of the aforementioned requirements of a First Amendment retaliation claim under §1983, the court finds at this stage of the case plaintiff has properly pled her retaliation claim in Count VIII with enough factual sufficiency and that she has properly pled the elements necessary to successfully state a *prima facie* retaliation claim against the six board members and SSD. As such, District Defendants'

motion to dismiss plaintiff's First Amendment retaliation claim contained in Count VIII of her SAC is **DENIED** and this claim is **PERMITTED TO PROCEED**.

### G. First Amendment Prior Restraint Claim–Count III

In Count III of her SAC, plaintiff alleges, in part, that District Defendants violated the First Amendment regarding the CCE which was imposed on her when she was demoted in May 2013. Specifically, plaintiff alleges that SSD violated her First Amendment right to free speech by prohibiting her from "discussing any matters associated with [the] Contract for Continued Employment" and by conditioning her future employment with SSD upon successful completion of an improvement plan contained in the CCE. (Doc. 46, ¶32). The District Defendants argue that the CCE did not involve a matter of public interest, and therefore, the restraint on plaintiff's speech did not constitute a First Amendment violation. Plaintiff counters by stating that a restraint on speech involving "any matters associated with" the CCE could plausibly extend to matters of public interest. Plaintiff suggests in her brief, (Doc. 60, at 27), that the ban could be construed to prohibit her from responding to media inquiries as to the reason for her removal from RMES and her status and duties with SSD. She also suggests that the ban could extend to similar inquiries from students, parents, and teachers. These claims are not alleged in plaintiff's SAC and she cannot amend her pleading in her

brief in opposition. *See* [Sung Tran v. Delavau, *LLC*, 2008 WL 2051992](#), \*11 (E.D. Pa. 5-13-08) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citing [Ex rel. Zimmerman, 836 F.2d at 181](#).).

A prohibition against speech is considered an unconstitutional prior restraint if the prohibited speech is constitutionally protected. *See* [Beckinger v. Township of Elizabeth, 697 F.Supp.2d 610, 623 (W.D.Pa. 2010)](#) ("The threshold issue in determining whether a claim exists for a violation of a right under the First Amendment is to determine whether the speech at issue is protected."). "The United States Supreme Court has held repeatedly that an injunction against speech generally will not be considered an unconstitutional prior restraint if it is issued after a jury has determined that the speech is not constitutionally protected." [Kramer v. Thompson, 947 F.2d 666, 675–76 (3d Cir. 1991)](#) (citation omitted). As discussed above, the First Amendment protects a public employee's right "to speak as a citizen addressing matters of public concern." [Garcetti, 547 U.S. at 417-18](#). However, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." Id. at 421.

The court finds that plaintiff has insufficiently plead in her SAC that the restraint on her speech regarding the CCE could plausibly concern matters of public interest. In fact, the CCE stated only that when plaintiff was assigned to work at Northeast Intermediate School ("NIS"), she was to refrain from

discussing any matters associated with the CCE. (Doc. 46, ¶26f). In Samuelson v. LaPorte Cmty. Sch. Corp., 526 F.3d 1046, 1052 (7th Cir. 2008), the court found that since speech related to a public employee's professional responsibilities is not protected by the First Amendment, restriction of that expression cannot constitute a prior restraint. Plaintiff does not contend that the CCE was a matter of public concern and she fails to allege that the prohibited speech regarding the CCE only when she was at NIS is constitutionally protected speech. Id. ("For the restriction to qualify as a prior restraint, the employee must have an interest in the speech as a citizen commenting upon a matter of public concern.") (citations omitted). Thus, the prohibition against plaintiff from discussing the CCE while she was working at NIS involves speech made pursuant to her official duties and is not an unconstitutional prior restraint. *See* Kramer, 947 F.2d at 675.

Thus, District Defendants' motion to dismiss plaintiff's First Amendment prior restraint retaliation claim contained in Count III of her SAC is **GRANTED** and this claim is **DISMISSED WITH PREJUDICE**.

### *H. First Amendment Retaliation Claim against Boland–Count IX*

In Count IX of her SAC, plaintiff alleges that defendant Boland, president of the teacher's union, retaliated against her in violation of the First Amendment by engaging in a campaign to destroy her career and by trying to get her terminated due to her criticisms of Boland's article in the union

newsletter. Plaintiff also alleged that Boland retaliated against her due to her challenge to her suspension and termination. Plaintiff further avers that "Boland's participation in the ... hearings facilitated [SSD's] decision to suspend and terminate [her]" and that Boland participated in District Defendants' deprivation of her due process rights. (Doc. 46, ¶'s 98-99). Plaintiff sues Boland in her individual capacity and in her capacity as union president. (Id., ¶ 4). Defendant Boland filed her own motion to dismiss plaintiff's SAC. (Doc. 54).

Boland is alleged to be a state actor even though she was not a board member since it is alleged she was jointly engaged with the six defendant board members to deprive plaintiff of her First and Fourteenth Amendment rights. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [§1983]. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (internal quotation and citation omitted). *See also* Brookhart v. Rohr, 385 Fed. Appx. 67, 69 (3d Cir. 2010) ("Liability would attach if a private party conspired with a state actor.") (citation omitted).

Plaintiff's claim that Boland participated in District Defendants' deprivation of her Fourteenth Amendment rights through their suspension and termination of her without proper hearing is **DISMISSED WITH PREJUDICE**

since the court has determined that plaintiff has not stated a cognizable due process claim in her SAC. Also, since plaintiff's claims against the six defendant board members in their official capacity are **DISMISSED WITH PREJUDICE**, plaintiff's claims against defendant Boland in her official capacity, which are premised on her conspiring with and acting as an agent of the board, are **DISMISSED WITH PREJUDICE**. *See* Price ex rel. O.P. v. Scranton School Dist., 2012 WL 37090, \*8 (M.D.Pa. Jan. 06, 2012) (Court held Scranton School District employees could not be held liable in their official capacity for violating due process rights of plaintiffs because they merge with the claim against the Scranton School District.).

The court finds that plaintiff has failed to state a First Amendment retaliation claim against Boland in Count IX in her individual capacity. Plaintiff alleges that Boland began her campaign to destroy her career in retaliation for her statements regarding Boland's article in the union newsletter. (Doc. 46, ¶92). However, Boland's alleged campaign against plaintiff for her speech with respect to the article in the newsletter was based on Boland acting as union president and not as a participant in a joint activity with the District Defendants or in conspiracy with the board members. Since Boland did not act under color of state law or act in conspiracy with a state actor when she engaged in the retaliation against plaintiff alleged in Count IX, a civil rights claim under §1983 fails as a matter of jurisdiction. *See* Polk Cnty. v. Dodson, 454 U.S. at 315; West v. Atkins, 487 U.S. at 48 (claims under §1983 require

actions under color of state law). As such, defendant Boland's motion to dismiss plaintiff's First Amendment retaliation claim contained in Count IX of her SAC is **GRANTED** and this claim is **DISMISSED WITH PREJUDICE**.

Therefore, all of plaintiff's claims contained in Count IX of her second amended complaint against Boland are **DISMISSED WITH PREJUDICE**.

### I. Section 1983 Conspiracy Claim against District Defendants and Defendant Boland–Count X

In Count X, plaintiff raises a §1983 conspiracy claim against District Defendants and defendant Boland. Plaintiff contends that she properly alleged that the District Defendants engaged in a conspiracy with each other and with defendant Boland by colluding and working together to unlawfully reassign, demote, suspend, and terminate her without giving her prior notice or an opportunity to be heard, and by colluding and working together to retaliate against her for exercising her First Amendment rights.

In Goodson v. *Maggi*, 2011 WL 2533286, *13 (W.D.Pa. June 23, 2011), the court, stated:

> Although §1983 liability will not generally lie against a private party, liability may attach where the private party "is a willful participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Hence, private action may be converted into state action if a state actor conspires with a private individual to deprive a plaintiff of his constitutional rights. *Id.* at 27–29, 101 S.Ct. 183. The requisite state action may be found even if the state actor with whom the

45

private individual allegedly conspired is himself immune from suit. *Id.* (action against private parties accused of conspiring with judge found to be state action under §1983). The allegations of a complaint, however, must state a claim for conspiracy. *See id.* at 28, [101 S.Ct. 183](#).

In order to make out a claim for conspiracy pursuant to [42 U.S.C. §1983](#), a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants. *[Bieros v. Nicola,](#)* [860 F.Supp. 223, 225 (E.D.Pa. 1994)](#) (citing *[Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,](#)* [507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)](#)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *See, e.g., [Shearin v. E.F. Hutton Group, Inc.,](#)* [885 F.2d 1162, 1166 (3d Cir. 1989)](#), *abrogated on other grounds by [Beck v. Prupis,](#)* [529 U.S. 494, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000)](#). Further, in light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *[Great Western Mining & Mineral Co.,](#)* [615 F.3d 159, 178 (3d Cir. 2010)](#) (quoting *[Twombly,](#)* [550 U.S. at 556, 127 S.Ct. 1955](#)).

Plaintiff alleges that "Boland has a symbiotic relationship with the District Defendants which has existed for years, and they all used their relationship to achieve their goal of terminating [her] without providing her due process." (Doc. [46](#), ¶ 107). At the outset, plaintiff's §1983 conspiracy claim that District Defendants conspired with defendant Boland to deprive her of her 14th Amendment due process rights with respect to the decisions to demote, suspend, and terminate her is **DISMISSED WITH PREJUDICE** since plaintiff

has failed to state a cognizable due process claim as discussed above. *See* Boyanski v. Capitol Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000); *see also Rosembert v. Borough of East Lansdowne*, 14 F.Supp.3d 631, 647 (E.D.Pa. April 9, 2014) (to state a §1983 conspiracy claim, plaintiff must establish, in part, "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.") (citations omitted).

However, plaintiff has alleged a cognizable conspiracy claim against all defendants with sufficient particularity as required under *Twombly* regarding her allegations that defendants conspired to retaliate against her for exercising her First Amendment rights. As detailed above, plaintiff has stated a viable First Amendment retaliation claim against District Defendants. Plaintiff has also sufficiently alleged that Boland reached an agreement with the defendant board members to retaliate against her for her public speech and her lawsuit, and to dissuade her from further speech. Thus, plaintiff's conspiracy claim under §1983 in Count X is **PERMITTED TO PROCEED** against all defendants regarding only her First Amendment retaliation claims. *See* Dennis v. DeJong, 867 F.Supp.2d 588, 650 (E.D.Pa. 2011) ("A section 1983 conspiracy claim requires proof that two or more conspirators reached an agreement to deprive Plaintiff of a constitutional right under color of law.") (citation omitted).

47

## V.    CONCLUSION

For the foregoing reasons, District Defendants' motion to dismiss, (Doc. 51), plaintiff's second amended complaint, (Doc. 46), is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Fifth Amendment due process claims are **DISMISSED WITH PREJUDICE**. Plaintiff's constitutional claims against SSD, except for her First Amendment retaliation claim in Count VIII and her §1983 conspiracy claim in Count X regarding retaliation, are **DISMISSED WITH PREJUDICE**. Plaintiff's claims against the six defendant board members in their official capacity are **DISMISSED WITH PREJUDICE**. Plaintiff's request for punitive damages against the six defendant board members in their official capacity is **DISMISSED WITH PREJUDICE**. Plaintiff's 14th Amendment pre-deprivation due process claims raised in Counts I-V of her SAC are **DISMISSED WITH PREJUDICE**. Plaintiff's First Amendment prior restraint retaliation claim contained in Count III of her SAC is **DISMISSED WITH PREJUDICE**. Plaintiff's 14th Amendment stigma-plus claim contained in Count VI of her SAC is **DISMISSED WITH PREJUDICE**.  Plaintiff's 14th Amendment post-deprivation procedural due process claims contained in Count VII of her SAC are **DISMISSED WITH PREJUDICE**. District Defendants' motion to dismiss plaintiff's First Amendment retaliation claim contained in Count VIII of her SAC is **DENIED** and this claim is **PERMITTED TO PROCEED** against SSD and the six board members in their individual capacity. Plaintiff's claim for punitive damages regarding Count VIII against the six board members in

48

their individual capacity is **PERMITTED TO PROCEED**.

Defendant Boland's motion to dismiss plaintiff's second amended complaint, (Doc. 54), is **GRANTED IN PART** and **DENIED IN PART**. Defendant Boland's motion is **GRANTED** with respect to plaintiff's 14th Amendment due process claim in Count IX and this claim is **DISMISSED WITH PREJUDICE**. Defendant Boland's motion is **GRANTED** with respect to plaintiff's First Amendment retaliation claim in Count IX and this claim is **DISMISSED WITH PREJUDICE**. Plaintiff's claims against defendant Boland in her official capacity are **DISMISSED WITH PREJUDICE**. As such, Count IX is **DISMISSED WITH PREJUDICE**.

Additionally, plaintiff's §1983 conspiracy claim in Count X against District Defendants and defendant Boland regarding her 14th Amendment due process rights is **DISMISSED WITH PREJUDICE**. Plaintiff's conspiracy claim under §1983 in Count X is **PERMITTED TO PROCEED** against all defendants, i.e., District Defendants and Boland, regarding only her First Amendment retaliation claims.

Finally, defendants will be directed to file their answers to the remaining claims of plaintiff's SAC within **fourteen (14) days** of the date of the court's order. A separate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 30, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2635-01.wpd