# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**GWENDOLYN DAMIANO,**               :

           **Plaintiff**        :    **CIVIL ACTION NO. 3:13-2635**

         **v.**                :        **(JUDGE MANNION)**

**SCRANTON SCHOOL**              :
**DISTRICT*, et al.,***
                         :

          **Defendants**

                         :

## M E M O R A N D U M

Pending before the court are: (1) a motion by defendants Scranton School District, Robert Sheridan, Robert Lesh, Lyn Ruane, Nathan Barrett, Armand Martinelli and Said Douaihy, ("District defendants"), for summary judgment, (Doc. 94), and (2) a motion by defendant Rosemary Boland for summary judgment, (Doc. 110). Based upon a review the motions and related materials, both motions will be granted.

## I.   PROCEDURAL HISTORY

By way of relevant procedural background, the plaintiff filed the instant action on October 25, 2013. (Doc. 1). An amended complaint was filed by the plaintiff on March 7, 2014, (Doc. 16), and a second amended complaint followed on October 23, 2014, (Doc. 46). Motions to dismiss the plaintiff's second amended complaint were granted, in part, and denied, in part, by

memorandum and order dated September 30, 2015, (Doc. 80, Doc. 81), leaving only the claims raised in Count VIII (First Amendment retaliation) and Count X (§1983 conspiracy regarding the First Amendment retaliation claim) against the District defendants and Count X against defendant Boland.

On October 27, 2015, the District defendants submitted a motion for summary judgment, (Doc. 94), statement of material facts, (Doc. 95), brief in support, (Doc. 96), and supporting exhibits, (Doc. 97). All deadlines were stayed in the case pending an attempt by the parties at mediation. (Doc. 99). With the mediation proving unsuccessful, the parties were given renewed case management deadlines. (Doc. 107). On March 11, 2016, the plaintiff filed an answer to the District defendants' statement of material facts and her own counterstatement of material facts, (Doc. 116), a brief in opposition to the District defendants' motion for summary judgment, (Doc. 117), and supporting exhibits, (Doc. 118). The District defendants filed a reply brief in support of their motion for summary judgment on March 24, 2016. (Doc. 120).

In the meantime, on January 14, 2016, defendant Boland filed her motion for summary judgment, (Doc. 110), along with a statement of material facts, (Doc. 111), and supporting brief, (Doc. 112). On March 11, 2016, the plaintiff filed an answer to defendant Boland's statement of material facts and her own counterstatement of material facts with exhibits, (Doc. 118), as well as an opposing brief, (Doc. 119). Defendant Boland filed a response to the

plaintiff's counterstatement of material facts, (Doc. 124), and a reply brief, (Doc. 125), on March 25, 2016.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli

v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## III.   DISCUSSION

### A.   Facts of Record[1]

The court has reviewed the statements and counterstatements of facts

submitted by the parties and finds the following facts supported by the record.

The plaintiff started working for the Scranton School District in 1998 as a

special education teacher at the West Scranton High School. (Doc. 97, Ex.

A, p. 21).[2] On October 8, 2002[3], the plaintiff was appointed as the acting

principal of George Bancroft Elementary School by former Superintendent

John R. Williams, after the sitting principal, Frank Sottile, became ill. (Id. at

---

[1]For purposes of the instant memorandum, the court has reviewed and combined the statements and counterstatements of material facts. In doing so, the court notes that, on a number of occasions, both the plaintiff and the District defendants have provided incorrect record citations leaving the court to forage through the record to determine whether statements are, in fact, supported. As noted by our and other circuits, "'Judges are not like pigs, hunting for truffles buried in' the record." Doebler v. Pennsylvania Hybrids, Inc. v. Doebler, 442 F.3d 812 (3d Cir. 2006). All counsel would be well advised in the future to assure that proper citations to the record are provided.

Moreover, in response to the plaintiff's forty-eight counterstatements of fact, the court notes that the District defendants admit only one and admit, in part, six more. As to a majority of the remaining forty-one statements, the District defendants deny the statement and proceed to simply reword the statement. The District defendants would be better served by admitting those facts which are supported by the record and reserving denials for those statements to which there is a valid denial.

[2]Record citations are provided only for those statements for which there is a claimed dispute.

[3]Although the plaintiff's counterstatement of material facts provides that the plaintiff became acting principal in 2000, the plaintiff's deposition testimony reflects that the actual date was October 8, 2002.

pp. 21-22). On March 2, 2003, the plaintiff became the principal of George Bancroft Elementary School. (Id. at p. 22). In August 2009, the plaintiff was reassigned by former Superintendent William King from the George Bancroft Elementary School to the Robert Morris Elementary School. (Doc. 97, Ex. A, pp. 23).

During the plaintiff's time at the Robert Morris Elementary School, in March 2010, defendant Boland, the President of the Scranton Federation of Teachers Union, ("SFT Union"), published an article in the SFT Union newsletter titled "Folly" criticizing the plaintiff's scheduling of after school meetings, which was termed a "draconian" attempt to coerce teachers into attending after school meetings. (Doc. 118, Ex. 7). While defendant Boland testified that she "most likely" wrote other articles in the SFT newsletter about other administrators who were in violation of the Collective Bargaining Agreement, she was unable to offer any other examples in which she called the alleged violations "draconian" or a "folly". (Doc. 118, Ex. 8, p. 71). On April 8, 2010, the plaintiff wrote a letter to former Superintendent King, former Director of Personnel John Vail and former Director of Elementary Education Lou Paris in response to the "Folly" article and requested a meeting with defendant Boland and the recipients of the newsletter. (Doc. 97, Ex. G, Attached Ex. Boland-2). Subsequently, on May 6, 2010, an unrelated grievance filed by the SFT against the plaintiff relating to paraprofessionals

was denied by Superintendent King. (Doc. 97, Ex. G, Attached Ex. Boland-3).

On April 30, 2013, the plaintiff was directed by Jessica Leitzel, the then Supervisor of Elementary Education, to report to the administration building with her association representative, after which she was informed that she was being moved to the Isaac Trip Elementary School. (Doc. 97, Ex. A, pp. 31-35). Immediately thereafter, on May 2, 2013, the plaintiff was directed to report to the Neil Armstrong Elementary School to cover for the principal who was going to be out on leave. (Doc. 97, Ex. A, pp. 57-58). On May 10, 2013, the plaintiff received a letter from former Superintendent King providing a summary of the meeting held on April 30, 2013. (Doc. 97, Ex. A, pp. 36-38). On June 3, 2013, the plaintiff was informed by former Superintendent King and Attorney John Minora that she was being suspended with pay. (Doc. 97, Ex. A, p. 72).

In the meantime, defendant Boland testified that in May of 2013 she attended a meeting with the teachers of the Robert Morris Elementary School, after she had been informed about the signing of teacher evaluations after the fact, "to clarify for my members the serious nature of signing documents after the fact, . . ." (Doc. 97, Ex. G, pp. 107-08). Subsequently, in July 2013, defendant Boland, in her capacity as President of the SFT, represented members of the SFT during interviews conducted by the Board of Education's solicitor. (Doc. 97, Ex. G, pp. 36-37).

The plaintiff requested a private hearing relating to the charges that led to her suspension. A School Code hearing was originally scheduled by the Board of Education to begin on July 30, 2013, but was postponed and rescheduled to begin on August 27, 2013. Attorneys Joseph O'Brien and Michael O'Brien represented the plaintiff at the School Code hearing, while Attorney John Minora represented the Scranton School District and Attorney Edwin Abrahamsen served as the School Code hearing examiner. The School Code hearing took place over the course of five days, on August 27, 2013, September 16, 2013, September 18, 2013, November 18, 2013 and November 19, 2013. The Scranton School District concluded its case-in-chief on September 18, 2013. Over the course of the School District's case-in-chief, seventeen of the eighteen teachers supervised by the plaintiff at Robert Morris Elementary School testified.[4]

During the plaintiff's hearing on August 27, 2013, defendant Boland either "banged"[5] or "knocked"[6] on the hearing room door and asked to speak to Attorney Minora because, although the plaintiff had requested a private hearing, defendant Boland had learned that there were individuals in the room

---

[4]With no supporting record citation, the plaintiff claims that not all teachers testified in favor of the School District.

[5]Plaintiff's testimony. (Doc. 118, Ex. 1, Pt. 2, p. 291).

[6]Defendant Boland's testimony. (Doc. 97, Ex. G, p. 132).

other than the plaintiff and the School Board members. Also during the plaintiff's hearings before the School Board, defendant Boland was present in a private room with witnesses immediately prior to and following their testimony serving as a union representative. (Doc. 97, Ex. G, p. 127-28).

On October 17, 2013[7], defendant Nathan Barrett submitted a letter of resignation resigning his seat on the Board of Education. Thereafter, on October 25, 2013, the plaintiff filed the instant action seeking to compel the speedy resolution of her School Code hearing. On November 12, 2013, the Board of Education accepted defendant Barrett's resignation and appointed Carol Oleski to fill the vacancy. The plaintiff's case-in-chief began shortly thereafter on November 18, 2013 and concluded on the following day.

On November 25, 2013, the plaintiff was terminated from her employment at the Scranton School District at a special meeting for personnel by a vote of seven to two. (Doc. 97, Ex. A, pp. 104-05; Doc. 97, Ex. M). On the following day, the Scranton School District issued a COBRA notice to the plaintiff advising her of her ability to continue group health coverage under the Scranton School District's plan.[8] Thereafter, on December 30, 2013, the

---

[7]The District defendants statement of material facts erroneously lists the date of Mr. Barrett's resignation as October 17, 2015.

[8]The plaintiff denies this statement. As indicated in the court's ruling on the District defendants' motion to strike portions of the plaintiff's affidavit, the plaintiff's statement relating the COBRA notice will be afforded the meaning (continued...)

plaintiff appealed the School Board's November 25, 2013 decision to terminate her to the Office of the Secretary of Education.

On March 10, 2014, Armand Martinelli, the Chairperson of the Personnel Committee, read a resolution in which the Superintendent of Schools recommended that Kelly Coyne be appointed as principal at the Robert Morris Elementary School and Tim Wolf be appointed as vice principal at the West Scranton Intermediate School. The resolution provided, in part, that ". . . these appointments are contingent upon the affirmation of the recent due process hearing. Should the results of said due process hearing not be affirmed, both parties shall be returned to their former positions." (Doc. 118, Ex. 9, p. 62). The resolution was ultimately passed. (Id. at pp. 24-25).

On July 10, 2014, the Office of the Secretary of Education issued an opinion and order in which it was concluded that there was insufficient evidence to sustain the District's dismissal of the plaintiff. As a result, the dismissal was reversed and it was directed that the plaintiff "be reinstated to her position as Principal and made whole for all losses occasioned by her dismissal." (Doc. 118, Ex. 3). On July 28, 2014, at a special meeting for general purposes, the School Board voted to reinstate the plaintiff "to her

---

[8](...continued)
offered in relation to the motion strike, i.e., only that she did not receive the formal written termination of her benefits through the mail.

position as Principal in the Scranton School District." (Doc. 97, Ex. Q).[9] At the meeting, Board President McGuigan clarified that "this is a reinstatement as a principal and the Superintendent always retains the right of an appointment." (Id.). According to the plaintiff's testimony, as well as statements made by School Board President McGuigan, it is the Superintendent of the Scranton School District who has the "right of assignment" to move principals between different school buildings as long as it is a "lateral move", i.e., "principal to principal". (Doc. 97, Ex. A, pp. 23-24, 52-53, 60; Ex. Q).

The Scranton School District appealed the decision of the Office of the Secretary of Education to the Commonwealth Court, which issued a decision on June 5, 2015[10] in which it concluded that "the special deputy did not err by reversing the District's dismissal and directing Damiano's reinstatement to the position of principal at the [Robert Morris Elementary School]." (Doc. 118, Ex. 4). An order was issued affirming the decision of the Office of the Secretary of Education. (Id.).

On August 6, 2015, the plaintiff was not reinstated to the position of

---

[9]There is apparently some dispute as to whether the School District complied with the remainder of the Secretary of Education's directive. That dispute is pending in the Court of Common Pleas of Lackawanna County, Damiano v. Scranton School District, No. 2014-cv-04753.

[10]The plaintiff erroneously cites the date of the opinion as August 5, 2015. (Doc. 116).

principal at the Robert Morris Elementary School, but was instead assigned by former Acting Superintendent Marichak to the John Adams Elementary School. Mr. Marichak testified that he thought that placing the plaintiff back at the Robert Morris Elementary School would create a "toxic situation" because there were teachers there that had testified in the plaintiff's hearings and that "there could be some situations that would not be optimal for our students."[11] (Doc. 97, Ex. C, p. 96). Mr. Marichak testified that also factoring into his decision was that his office had taken between five and twenty phone calls from parents protesting the plaintiff's possible reassignment to the position as principal at the Robert Morris Elementary School.[12] (Doc. 97, Ex. C, pp. 96-102).

In relation to her assignment to John Adams Elementary School, the plaintiff testified that she did not have a reduction in pay or benefits as a result of being reassigned from Robert Morris Elementary School to John Adams Elementary School. (Doc. 97, Ex. A, pp. 25, 127). She has also provided testimony that she would have been agreeable to being assigned to the principal position at the Isaac Tripp Elementary School or "[a]nyplace there

---

[11]Without record citation, the plaintiff denies that this was a factor in reassigning her to the John Adams Elementary School, asserting instead that she was retaliated against for her challenge of the decision to terminate her. Plaintiff's assertion is, of course, a legal conclusion.

[12]See n.11.

was an opening".[13] (Doc. 97, Ex. A, pp. 118-19). The plaintiff testified at her

deposition that she does not consider her assignment as principal of the John

Adams Elementary School as a punishment,[14] (Doc. 97, Ex. A, pp. 123, 166),

but testified that John Adams is consistently the lowest performing school in

the Scranton School District, (Doc. 118, Ex. 2)[15]. She challenges her

placement at John Adams Elementary School arguing that the assignment left

her approximately 12 days to prepare for the school year, and that she was

placed into a position where the school was non-complaint with IEP's and that

the District did not train her for educational and behavioral programs that were

specific to John Adams. The plaintiff states that she constantly requested

assistance from the District, but was ignored. (Doc. 118, Ex. 2).

On February 27, 2015, the plaintiff was, again, placed on paid

administrative leave, but was still an employee of the Scranton School District

as the principal of the John Adams Elementary School. (Doc. 97, Ex. A, pp.

---

[13]Although this statement is denied, in part, no discussion or record support is provided for the denial.

[14]Plaintiff denies this statement citing to her affidavit in which she states that the assignment to John Adams Elementary School was retaliatory. The court has, however, stricken that part of the plaintiff's affidavit in which she opined that her assignment to John Adams Elementary School was retaliation. (Doc. 128).

[15]Former Superintendent John Marichak testified that he believed that John Adams was "one of our lower scores", with Robert Morris Elementary School performing lower than John Adams for the year 2013. (Doc. 97, Ex. C, pp. 102-04).

24-25). On July 21, 2015, the plaintiff received a message from John Marichak that the District wanted to "get [her] back to work" but she testified that she had not been informed as to reasons for her suspension or the results of any type of investigation that may or may not have been conducted. (Doc. 118, Ex. 2).

### B.    District Defendants' Motion for Summary Judgment

In Count VIII of her second amended complaint, the plaintiff alleges that the District defendants placed her at John Adams Elementary School instead of Robert Morris Elementary School in retaliation for her exercise of her First Amendment rights. Specifically, the plaintiff alleges that she was retaliated against because she challenged her suspension and termination and "advocat[ed] for the constitutional due process rights of school district employees." The plaintiff alleges that the District defendants further retaliated against her "by failing to make Consolidated Omnibus Budget Reconciliation Act, ("COBRA"), health benefits available to her upon her termination. The plaintiff alleges that her speech regarding her suspension and termination is a matter of public concern because it involves the constitutional due process rights of public employees and involves her criticism of the District's policy that permits the District to suspend and terminate public employees without proper due process. The plaintiff alleges that her speech is a matter of public

concern because it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of public officials.

In their motion for summary judgment, the District defendants initially argue that the plaintiff's First Amendment retaliation claim fails as a matter of law. In order to establish a First Amendment retaliation claim, the plaintiff must demonstrate: "(1) [s]he engaged in constitutionally protected conduct, (2) [s]he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." Brightwell v. Lehman, 637 F.3d 187, 194 (3d Cir. 2011) (citation omitted). The United States Supreme Court extended this analysis in Borough of Duryea v. Guarnieri to actions brought under the First Amendment's Petition Clause, holding that "[i]f a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases." — U.S. —, —, 131 S.Ct. 2488, 2500 (2011).[16] However, the Court

---

[16]In ruling on the defendants' prior motions to dismiss the plaintiff's second amended complaint, this court cited to Hill v. Borough of Kutztown, 455 F.3d 225, 242 n.24 (3d Cir. 2006), wherein the Third Circuit had previously held that a public employee's act of filing a lawsuit against a public employer is, generally, considered to be petitioning activity that is subject to protection under the Petitioning Clause of the First Amendment regardless of whether the lawsuit related to a matter of public concern. However, subsequent to Hill, the United States Supreme Court issued its opinion in Borough of Duryea v. Guarnieri, — U.S. —, 131 S.Ct. 2488, 180 L.Ed.2d 408 (2011), holding that in retaliation cases brought under the Petition Clause of

(continued...)

provided that, if such an employee petitions "as a citizen on a matter of public concern, the employee's First Amendment interest must be balanced against the countervailing interest of the government in the effective and efficient management of its internal affairs." Id.

Here, the District defendants argue that the plaintiff's speech was not a matter of public concern.[17] Whether such public concern exists is "a question of law to be determined by examining 'the content, form, and context of a given statement, as revealed by the whole record.'" Rode v. Dellarciprete, 845 F.2d 1195, 1201 (3d Cir. 1988) (citation omitted); see also Connick v. Myers, 461 U.S. 138, 148 (1983). "A public employee's speech involves a matter of public concern if it can be fairly considered as relating to any matter

_____

[16](...continued)
the First Amendment, the petitioning activity must have regarded a matter of public concern in order to be considered protected activity. In doing so, the Court abrogated those lower court decisions, which had held that the petitioning activity of public employees need not be on a matter of public concern in order to merit First Amendment protection. Instead, the Supreme Court held that in First Amendment retaliation cases, the test for whether the plaintiff had engaged in protected conduct should be the same whether the allegedly protected conduct is speech or petitioning activity. See Campbell v. W. Pittston Borough, 2011 WL 4435402, at *6 (M.D. Pa. Aug. 23, 2011), *report and recommendation adopted*, 2011 WL 4442708 (M.D. Pa. Sept. 22, 2011), *aff'd,* 498 F. App'x 186 (3d Cir. 2012).

[17]The court notes that the District defendants had previously raised this issue in their motion to dismiss the plaintiff's second amended complaint. Viewing the allegations of the plaintiff's complaint, the court determined that the plaintiff had sufficiently alleged that her speech involved a matter of public concern. However, the court must now, on summary judgment, view the record as a whole to determine whether the plaintiff has supported her claims.

of political, social or other concern to the community." Brennan v. Norton, 350 F.3d 399, 412 (3d Cir. 2003) (citation omitted). Thus, where public employees simply level personal complaints against their employers, courts routinely find an absence of public concern. Mere employee grievances do not rise to the necessary level - "absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick v. Myers, 461 U.S. at 147 (1983). "The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts." Guarnieri, 131 S.Ct. at 2501.

In this case, even viewing the facts in a light most favorable to the plaintiff as the non-moving party, considering the content, form and context of the plaintiff's speech, there is nothing in the record which demonstrates that the plaintiff's speech involved a matter of public concern. While not determinative, courts are to consider the speaker's motivation in making the statements. Cooper v. Cape May County Bd. of Social Services, 175 F.Supp.2d 732, 744 (D.N.J. 2001) (quoting Zamboni v. Stamler, 847 F.2d 73, 78 (3d Cir.1988)) (citations omitted). Moreover, complaints about personal abuses, versus abuses to the public, suffered at the hands of public

employees do not generally rise to the level of public concern. See, Tayoun v. City of Pittston, 39 F. Supp. 3d 572, 584 (M.D. Pa. 2014) (citing Bell v. City of Philadelphia, 275 Fed. App'x. 157, 159 (3d Cir. 2008) (finding complaints of personally experiencing alleged gender and race discrimination by supervisors in a public office was not a matter of public concern); Feldman v. Cmty. Coll. of Allegheny (CCAC), 85 Fed. App'x. 821, 825 (3d Cir. 2004) (finding that discrete complaint of racial and religious animus by a supervisor was a private matter not of public concern); Middleton v. Deblasis, 844 F.Supp.2d 556, 565 (E.D.Pa. 2011) (finding that plaintiff's complaints about her own abuse and mistreatment by her superiors was not a matter of public concern)).

Here, the plaintiff readily admits that her speech emanated from her own personal interests. While motivation is not solely determinative, there is nothing in the content, form and context of the plaintiff's speech which reflects that it was a matter of public concern. To this extent, the plaintiff sought a private versus public hearing to address the charges against her, during which she sought only to protect her own interests. A review of the plaintiff's appeal to the Office of the Secretary of Education after her termination reveals only evidentiary challenges specific to her own School Board hearings. She claimed a lack of specificity in the statement of charges and determination of the Board in her particular case; that evidence presented at her hearing was

insufficient; and that there were evidentiary errors by the Board at her hearing. As a result of these purported errors, the plaintiff sought to be reinstated to her position as principal at the Robert Morris Elementary School. She provided nothing in either her request for a private hearing or in the subsequent appeal of her termination which demonstrated that she sought to expose a greater social injustice in the circumstances surrounding her termination.

Moreover, the plaintiff provided in her appeal to the Office of the Secretary of Education that she instituted the instant action to address the refusal of the District to grant her a hearing with respect to her termination proceedings and that this constituted a violation her due process rights. She sought monetary damages and injunctive relief requiring the District to either dismiss the charges against her or schedule a hearing. Again, the plaintiff raised no claim of a broad social injustice, but sought only relief for her own perceived injustices.

When questioned about her First Amendment retaliation claim in her deposition, the plaintiff testified, in relevant part, as follows:

> Q. Now, it's my understanding that your suit with regards to your assignment to John Adams is retaliation for some sort of First Amendment protected speech of yours; is that correct?
> A. Yes, because I was denied my right to be heard. I was punished. I was suspended. I was pulled out of the school without being given my due process rights.

Q.  Okay.

A.  So a demotion or a change of placement would not have occurred had I not been pulled from the school as I did. This (indicating) would not have occurred, this March 10th, if I was not – if I was afforded my due process rights.

    I was never given the opportunity to be heard once a decision was – after the decision was made – or before the decision was made to fire me.

Q.  Do you claim that you've – that any of your speech was the reason why you were assigned to John Adams?

A.  I was denied my right to speak.

Q.  Okay. Please describe that.

A.  Okay. Before I received any type of write-up or even if they were going to write me up, they should bring their concerns to me and I should have a right to defend myself and explain myself. That never happened.

Q.  Okay. Let me give you the benefit of my reading of your Complaint. You allege in your Complaint that you were assigned to John Adams in retaliation for your speech, not for your inability to speak. So could you tell me what speech you're referring to that you – that John Marichak retaliated against you as a result of?

A.  It was not just John Adams, it would be any school other than Robert Morris, and because at a due process hearing, you know, I answered the questions and defended myself, you know, why was I not put back into my school?

Q.  Okay. So your speech defending yourself at the due process hearing was – tell me if I'm wrong. From listening to you, you believe your speech at the due process hearing defending yourself was the reason why you were assigned to John Adams Elementary School rather than Robert Morris?

A.  To any other school other than Robert Morris.

Q.  Okay. Any other speech?

A.  No. When I spoke with John Minora and – no. With Billy Gaynord and John Marichak.

Q.  Uh-huh.

A.  You know, I said all the reasons why I felt I should be back at Robert Morris and when the acting superintendent said, "Well, I'll check into it and I'll come up with a decision, but, you know, the board is going to do what the board is going

20

to do." To me, because maybe I defended myself or maybe because I expressed myself, you know, what does that mean, the board is going to do what the board is going to do?

It didn't matter – obviously, it didn't matter what the superintendent said, because he told me that. It doesn't matter. Ultimately the board is going to do what the board is going to do.

Q.   But John Marichak made the decision to assign you there, correct?

A.   He's the one that delivered the decision. Who ultimately made the decision? I don't know.

Q.   You don't know who participated in that decision?

A.   I know he told me that he would bring it to the board and discuss it with the board and the board would decide.

Q.   Typically the superintendent of schools appoints the principals or rotates?

A.   Correct.

*   *   *

Q.   Go ahead.

A.   Because I did defend myself.

Q.   Okay.

A.   Because we did appeal, defending me, which to me that's – that freedom of speech of appealing.

Q.   Uh-huh.

A.   And the Department of Education voted in favor of me. I feel as though the – the district by not – did not place me at Robert Morris because of the simple fact that I did defend myself, I did appeal, and the favorable – and it was in my favor.

Q.   So your speech was defending yourself at the school code hearing and the appeal of the school board's decision terminating you?

A.   Correct.

Q.   Thank you for that clarification.

(Doc. 97, Ex. A, pp. 127-131).

It's fairly clear from the plaintiff's deposition testimony that in requesting

21

her School Board hearing and in filing her appeal from the decision of the School Board, the plaintiff was only seeking to defend herself and her own interests and was not seeking to advance some greater social justice. Thus, the court finds as a matter of law that the plaintiff's speech was not on a matter of public concern. While the public may be interested in the matters on which the plaintiff spoke, she has not demonstrated that her speech was on a matter of public concern. The plaintiff cannot therefore meet the first requirement of a First Amendment retaliation claim, i.e., that she engaged in constitutionally protected conduct by speaking on a matter of public concern. The District defendants will, therefore, be granted summary judgment as to Count VIII. See Middleton v. Deblasis, — F.Supp.2d —, 2011 WL 6934095, at *4 (E.D.Pa. Dec. 30, 2011) (dismissing plaintiff's complaint for lack of public concern where she complained only of her own abuse and mistreatment); McCartney v. Penn. State Police, 2011 WL 3418381, at *31 (M.D.Pa. Mar. 9, 2011) (finding no public concern for where "[n]othing in the [underlying] complaint intimated a wider pattern of inappropriate conduct), *report and recommendation adopted by* 2011 WL 3293283 (M.D.Pa. Jul. 29, 2011); Sulehria v. City of N.Y., 670 F.Supp.2d 288, 318 (S.D.N.Y. 2009) (finding no matter of public concern where the underlying "complaints consist mostly of a recitation of many instances of alleged hostility or mistreatment directed at [plaintiff] personally, and which apparently affected only [plaintiff].").

With respect to the plaintiff's conspiracy claim in Count X of her second amended complaint, to establish a conspiracy claim, the plaintiff "must show that two or more conspirators reached an agreement to deprive . . . her of a constitutional right under color of law." Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by* United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003). "A conspiracy to engage in conduct that does not amount to a constitutional violation is not a violation of §1983." Whittaker v. County of Lawrence, 437 Fed. App'x. 105, 109 (3d Cir. 2011) (nonprecedential).

Here, the plaintiff's conspiracy claim relates to her First Amendment retaliation claim. Because the court has determined that the defendants are entitled to summary judgment on the plaintiff's First Amendment retaliation claim, her §1983 conspiracy claim also fails. See Id. (finding no conspiracy claim without a constitutional violation). The District defendants will therefore be granted summary judgment on this claim as well.

### C.    Defendant Boland's Motion for Summary Judgment

As previously noted, only Count X, the plaintiff's §1983 civil conspiracy claim remains against defendant Boland. For the reasons set forth with respect to the District defendants, defendant Boland will be granted summary judgment on the plaintiff's §1983 civil conspiracy claim.

23

## IV.    CONCLUSION

Based upon the foregoing, the District defendants' motion for summary judgment will be granted and defendant Boland's motion for summary judgment will be granted. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Date:  September 19, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2635-03.wpd